NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  07a0786n.06

Filed:  November 8, 2007

Nos. 06-5381 and 06-5382

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VINCENT ZIRKER and ROOSEVELT PITTS, JR., | ) ) ) | |
| Defendants-Appellants | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| UNITED STATES OF AMERICA, | ) ) | |
| Appellees | ) ) | |

Before: COLE and COOK, Circuit Judges; and MILLS, District Judge.[*]

MILLS, District Judge.  A jury convicted Vincent Zirker of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a) and conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846.  Similarly, Roosevelt Pitts was convicted of manufacturing cocaine

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

base in violation of § 841(a) and conspiracy to manufacture cocaine base under § 846. Zirker appeals his conviction and both defendants appeal their sentences. For the following reasons, this Court affirms Zirker's conviction, but vacates both defendants' sentences and remands the case to the district court for a new sentencing hearing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Superseding Indictment

On November 2, 2005, a six-count superseding indictment was returned against Defendants Zirker and Pitts. Counts 1-4 arose out of the drug transactions occurring between April and July 2003. Specifically, Counts 1 and 2 charged Zirker with conspiracy and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, while Counts 3 and 4 charged Pitts with conspiracy and manufacture of crack cocaine in violation of §§ 841(a)(1) and 846. Pitts was also charged under Count 1 for conspiracy to possess cocaine with intent to distribute. Counts 5 and 6 related solely to events occurring on November 19, 2003, and charged Zirker with unlawful distribution and possession with intent to distribute the cocaine in violation of § 841(a)(1) and for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Zirker unsuccessfully moved for severance of Counts 5 and 6.

### B.   The Trial

At trial, the government offered the testimony of five witnesses involved with the alleged drug conspiracy, three of whom were already in custody. The first such witness was Nathan Morgan. According to Morgan, the chain of events leading up to the conviction of both Pitts and Zirker began on March 31, 2003, with the arrest of Keith Smith. A major drug trafficker working out of Nashville, Smith had over 50 kilograms of cocaine stashed in a locker rented by Nathan Morgan. In response to Smith's arrest, Morgan contacted his friend Vincent Zirker about the cocaine. Together Morgan and Zirker traveled to the locker and, with the help of a locksmith hired by Zirker, retrieved several suitcases filled with the drug. On April 3, 2003, Zirker registered a new locker in his name and kept a copy of the key.

Morgan further explained that from April until July 2003, he and Zirker were processing the cocaine they had recovered into crack cocaine (known as "cooking") and selling it. Zirker would retrieve the cocaine from the locker, process the cocaine into crack cocaine, and then distribute the product (or proceeds from it) as Morgan directed. In addition to Zirker, Morgan was also assisted by Roosevelt Pitts. Pitts, who lived with Morgan at the AmeriSuites hotel, worked as both a cook and, on several occasions, a distributor. This arrangement lasted from April until July 2003.

The government also called Kevin Lindsley and Dale Jennings, both of whom were facing other drug charges. Lindsley, a customer of Morgan's and a one-time

cellmate, testified that he had received a total of four kilograms of cocaine from Morgan and that Zirker had twice handled the deliveries. Jennings, Morgan's driver and occasional roommate, testified that he had observed Zirker prepare an ounce of crack cocaine. Further, Jennings claimed that he repeatedly witnessed Zirker deliver cocaine, usually to him or to Morgan. Two other witnesses also testified to Pitts' involvement in the conspiracy.

In addition to witness testimony, the government introduced several items of evidence, including Zirker's storage rental records, phone calls between Zirker and Morgan, and hotel records relating to Morgan.

Finally, the government called police officers to testify as to the November 2003 drug activities. The officers explained that Zirker was stopped in his car while traveling with a passenger on November 19, 2003. During the stop, the passenger fled the car and, with officers in pursuit, threw away a bag containing crack cocaine and heroin. Their suspicions aroused, the police asked Zirker to step out of the car and soon discovered narcotics as well as a firearm under his seat. After Zirker's arrest, a search of the backseat of the police car uncovered more crack cocaine.

After the government presented this evidence, Zirker moved for acquittal. The district court denied the motion. Following a two day jury trial, Zirker was convicted on Counts 1 and 2, and Pitts was convicted on Counts 3 and 4. The jury acquitted

Zirker on Counts 5 and 6, the charges relating to the November 2003 incident, and Pitts was acquitted of the conspiracy charge in Count 1.

C.    The Sentencing Hearing

On March 6, 2006, the district court held a sentencing hearing for Zirker and Pitts.  Both defendants had prior convictions sufficient to qualify them as career offenders under the Sentencing Guidelines.  Zirker was twice convicted on felony drug charges, and Pitts had convictions for conspiring to commit a carjacking and for aiding and abetting an armed robbery in addition to a drug offense.

Although acknowledging the validity of their prior convictions, defendants argued that the range suggested by the Sentencing Guidelines exaggerated the severity of their prior offenses, particularly because of the small amounts of drugs involved.  While apparently amenable to such arguments, the trial court, relying on *United States v. Rucker*, 171 F.3d 1359 (11th Cir. 1999) and *United States v. Gibson*, 434 F.3d 1234 (11th Cir. 2006), ultimately found that the quantity of drugs involved in a prior conviction could not be considered.

Zirker was classified as being in criminal history category VI, with a Guideline range of between 262 and 327 months.  The district court imposed a low-end sentence of 262 months.  The district judge went on to explain:

If the court understood the law to allow me to consider the amount of

drugs under the statute, the court would, but by reading the statute and the cases, I'm not certain that I do. To ameliorate the fact of this, I have sentenced at the low end of the guideline range, 262 instead of 327.

Pitts was sentenced to 300 months with an additional 60 months in a community corrections center. The district judge again explained that "[t]he court has imposed this sentence essentially for the same reasons for Mr. Zirker in that under the guidelines, and it appears by statute, that the court does not look to the amount of drugs involved; if the court were to do so, I may consider a lesser offense."

## II. ANALYSIS

On appeal, Zirker alleges error in the district court's refusal to grant his severance motion. Zirker also asserts that the evidence was insufficient to support a conviction on Counts 1 and 2. Both defendants challenge the validity of their sentence.[2]

### A. Severance of Counts 1 and 2 from Counts 5 and 6

Defendant Zirker claims that the trial court erred in denying his motion to sever Counts 1 and 2, relating to the April-July drug conspiracy and possession charges, from Counts 5 and 6, relating to the November possession and firearms charges. Zirker correctly concedes that Counts 1 and 2 were properly joined together, as were

---

[2]Pitts also lists a host of other claims, but has waived these arguments by not supporting them with any argument. *See* Fed. R. App. P. 28(a)(9); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Counts 5 and 6, but he objects to the joinder of all four of these counts in a single indictment under both Federal Rule of Criminal Procedure 8 and 14.

Even assuming that Zirker is correct and Rule 8 was violated, any such error was harmless.[3]  Federal Rule of Criminal Procedure 52(a) allows for reversal only where trial errors "affect substantial rights." *United States v. Chavis*, 296 F.3d 450, 461 (6th Cir. 2002) (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)).  "[A]n error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citing *Lane*, 474 U.S. at 449).  "The burden of persuasion in demonstrating that an error is harmless under Rule 52(a) rests with the government." *Id.* (citing *United States v. Segines*, 17 F.3d 847, 851 (6th Cir. 1994)).[4]

---

[3]Under Rule 8(a), which generally governs the joinder of offenses, an offense can be joined in an indictment if it is of "the same or similar character" as another joined offense.  Fed. R. Crim. P. 8(a).  Thus, the parties here dispute whether Counts 1 and 2 were similar to Counts 5 and 6.  It should be noted, however, that the weight of authority from outside of this Circuit suggests that Rule 8(b) applies in most cases involving more than one defendant. *See United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997).  This Circuit has yet to decide whether it will follow the majority rule. *See id.*  Should the majority rule apply, the joinder of Counts 5 and 6 to the indictment would certainly be improper, since Rule 8(b) lacks the "same or similar character" provision of Rule 8(a).  Fed. R. Crim. P. 8(b).  Nevertheless, because this Court concludes that any error in joinder was ultimately harmless, the question of the applicability of Rule 8(b) in these circumstances is left for another day.

[4]Zirker alternatively alleged error under Rule 14 if the Court found that joinder was technically proper.  Nevertheless, because Zirker did not suffer prejudice under Rule 52(a), he cannot demonstrate prejudice sufficient to meet Rule 14's more rigorous standards. *See, e.g.,*

In this case, the government has carried its burden and shown that any error was harmless. First, due to the differences between the two sets of counts, it seems unlikely that the jurors would have confused any issues or that any evidence would have spilled over from one case into another. While both sets of counts dealt with drug transactions, they did occur several months apart, thus making the cases more distinct. Therefore, it would be unlikely that jurors would incorrectly apply the firearm evidence in their deliberations on the charges relating to the April-July conspiracy charges. Even absent such differences, however, "a jury is presumed capable of considering each count separately. . . ." *United States v. Cope,* 312 F.3d 757, 781 (6th Cir. 2002) (citing *United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir. 1994)).

Second, the lack of prejudice stemming from improper joinder is powerfully bolstered by Zirker's acquittal on the later drug and firearm counts. In fact, the existence of an acquittal virtually guarantees a finding of no prejudice. *See Cope*, 312 F.3d at 781; *United States v. Graham*, 275 F.3d 490, 513 (6th Cir. 2001) (applying Rule 14 and noting that acquittal constitutes "proof that the jurors were able to distinguish between the drugs and weapons evidence . . ."); *United States v. Moreno*,

---

*United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (noting that severance motions under Rule 14 are left to the sound discretion of the trial court and reversal is warranted only after a strong showing of prejudice).

933 F.2d 362, 370 (6th Cir. 1991); *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985); *United States v. Lykes*, 71 Fed. Appx. 543, 549 (6th Cir. 2003) (stating that defendant's acquittal on one count of carjacking made "'any argument that he was prejudiced [on the other count] difficult, if not impossible, to support'"). Zirker's case is no exception. As such, this Court finds that any error in the joining of offenses against Zirker was harmless.

B.     Sufficiency of evidence

Zirker next argues that the district court erred in denying his motion for acquittal and urges this Court to rectify that error by overturning his convictions on Counts 1 and 2 for a lack of evidence.

The denial of an acquittal motion is reviewed *de novo*. *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (citing *United States v. Talley*, 194 F.3d 758, 764 (6th Cir. 1999), cert. denied, 528 U.S. 1180 (2000)). The underlying claim of insufficient evidence is reviewed by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "A defendant making such a challenge bears a very heavy burden." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (citation omitted). "Circumstantial evidence alone is sufficient to

- 9 -

sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (citations and internal quotations omitted).

In this case, the evidence suffices to support a jury finding of guilty beyond a reasonable doubt. First, the government produced three witnesses who testified concerning the drug conspiracy and were themselves implicated in it. Nathan Morgan described the roles of Zirker and Pitts in the processing and distribution of drugs under his direction. Kevin Lindsley and Dale Jennings claimed that they had each seen Zirker make cocaine deliveries at Morgan's behest. Although Zirker claims that the testimony "varied dramatically," no examples of conflict are given. On the contrary, Morgan's testimony neatly meshes with that of Lindsley and Jennings, as both parties confirm Morgan's use of Zirker as a delivery man. Additionally, the rental records corroborate Morgan's claims that he and Zirker kept the drugs in a rented locker. Further, phone records support Zirker's connection to Morgan.

Importantly, Zirker's arguments rely almost entirely on accusations of bias, especially with regard to Morgan, accusing him and others of fabricating the conspiracy story in order to secure a better deal for themselves or to get back at Zirker himself. As such, Zirker's contentions are misplaced, because an appellate court will "not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir.

2001) (citation and internal quotations omitted)).  Rather, "[i]n review[ing] a defendant's claim of insufficiency we draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted).  Further, "it is well settled that uncorroborated testimony of an accomplice may support a conviction in federal court . . . ." *Spearman*, 186 F.3d at 746.  Here, the government presented the testimony of three witnesses and several pertinent records supporting guilt.  As such, the jury, if it believed the witnesses, could have found Zirker guilty beyond a reasonable doubt.[5]

C.    Sentences

Both Zirker and Pitts allege error in the district court's sentencing decision.  Application of the Sentencing Guidelines is reviewed *de novo*.  *United v. Katzopoulos*, 437 F.3d 569, 574 (6th Cir. 2006) (citation omitted).  Sentences within the Guidelines carry a "rebuttable presumption of reasonableness." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).  While the Guidelines no longer mandate sentences, a court "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005).  Before *Booker*, this

---

[5]Zirker also attacks his conviction because the jury found him guilty of conspiracy and possession of less than five kilograms of cocaine.  He surmises that because the evidence, if believed, would have proven the presence of more than 5 kilograms, the jury must have compromised on the verdict.  Such allegedly inconsistent verdicts, however, do nothing more than demonstrate the jury's leniency.  *See United States v. Powell*, 469 U.S. 57, 62-63 (1984).

- 11 -

Court "review[ed] *de novo* the issue of whether the district court was aware of its authority to depart downward." *United States v. Smith*, 278 F.3d 605, 609 (6th Cir. 2002) (citation omitted). Additionally, this Court presumed that district judges knew of their discretionary authority to depart downward even before the *Booker* decision. *See id.* at 610 (citation omitted).[6]

In this case, the district court sentenced Zirker and Pitts as career offenders under the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 4B1.1(a) (2004). Neither defendant contests the validity of this decision. During sentencing, however, the district court stated its belief that the career offender provision of the Guidelines foreclosed any consideration of the quantity of drugs involved in defendants' prior convictions. Such a position conflicts with *Smith,* 278 F.3d at 610, which found that "in certain circumstances, the small quantity of drugs upon which a defendant was previously convicted may be a factor, in combination with other mitigating facts, that takes a case out of the heartland of the Guidelines' career offender provision, and justifies a downward departure." *See also United States v. Washington*, 2001 WL 1301744 (6th Cir. 2001) (small amounts of drugs in prior crimes justified downward departure because criminal history otherwise over-

_____

[6]With the overturning of mandatory sentencing rules, the terminology of "downward departure", etc., has changed. Nevertheless, this standard of review and presumption of knowledge should only be strengthened since discretion is now the rule rather than the exception.

represented those crimes).[7]   Therefore, since the sentencing court erroneously believed that it could not depart from the Guidelines based on the quantity of drugs involved in defendants' prior convictions, the sentence's presumption of reasonableness has been overcome.

Even where a sentencing error occurred, however, "it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *United States v. Hastings*, 461 U.S. 499, 509 (1983).   First, as to Zirker, the government correctly concedes that the sentencing error was not harmless.   Zirker, having two prior drug convictions, fell under the career offender provision of the Sentencing Guidelines.   *See* U.S. Sentencing Guidelines Manual § 4B1.1(a).   The district court expressly stated that if it could consider the drug quantities involved in those convictions, it might impose a lesser sentence.   Without such consideration, the court sentenced Zirker on the low end of the Guidelines' range.   Since the court could, in fact, have considered the amount of drugs in the prior conviction, and since it affirmatively stated its intention to further reduce the sentence upon such consideration, the error here was not harmless.   Therefore, Zirker is entitled to a new sentencing hearing.

---

[7] Both of these cases were decided prior to the expansion of discretionary sentencing ushered in by *Booker*, and thus are, if anything, only strengthened by that case.

As for Pitts' sentence, however, the government contends that the sentencing error was harmless. Indeed, Pitts' case does differ from Zirker's, since only one of Pitts' three prior convictions relates to drugs at all. Nevertheless, the court expressly stated that it "may consider a lesser offense" if consideration of the amount of drugs involved in the prior crime were permitted. Given this clear declaration by the sentencing judge, the government cannot carry its burden of showing that the error was harmless. Therefore, Pitts is also entitled to a new sentencing hearing.

## III. CONCLUSION

For the reasons stated above, this Court affirms Zirker's conviction but vacates the sentences of both Zirker and Pitts. The case is remanded to the district court for resentencing.