[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 17, 2006
THOMAS K. KAHN
CLERK

No. 05-15140
Non-Argument Calendar

_____

D. C. Docket No. 05-00014-CR-4-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE HENRY WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(May 17, 2006)**

Before DUBINA, HULL and WILSON, Circuit Judges.

PER CURIAM:

Willie Henry Williams appeals his convictions and 168-month sentences for

distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)(iii), (b)(1)(C), and 851. Williams's conviction was based on four sales of crack cocaine to a confidential informant ("CI"), and on crack cocaine seized at his house during the execution of a search warrant. On appeal, Williams argues that the district court abused its discretion in sustaining objections to several cross-examination questions put by Williams's counsel to an investigating officer regarding the CI's drug use. Williams also contends that the district court erred in overruling his objection to the U.S. Sentencing Guidelines Manual ("Guidelines") calculation, because the government engaged in sentence manipulation when it did not arrest him after his second drug transaction. We affirm Williams's convictions and sentences.

## I.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The primary purpose of the Confrontation Clause "is to secure for the [defendant] the opportunity of cross-examination." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1366 (11th Cir. 1994) (alteration in original). "The Confrontation Clause is satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the

2

factfinder the reasons for giving scant weight to the witness' testimony." *Dorsey v. Chapman*, 262 F.3d 1181, 1188 (11th Cir. 2001) (internal quotes omitted) (omission in original). Indeed, we have emphasized that the Confrontation Clause "only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotes omitted). Trial judges have discretion to impose reasonable limits on cross-examination due to "'concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Baptista-Rodriguez*, 17 F.3d at 1366 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986)). Ultimately, a defendant establishes a Confrontation Clause violation "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Van Arsdall*, 475 U.S. at 680, 106 S. Ct. at 1436 (internal quotes omitted). We review restrictions on cross-examination for abuse of discretion. *Baptista-Rodriguez*, 17 F.3d at 1370-71.

Williams contends that his confrontation rights were violated when, during

3

his trial, the district court sustained government objections to five of his counsel's cross-examination questions as "argumentative." According to Williams, the district court's actions essentially prevented his counsel from impeaching the credibility of the CI, and thereby "irreparably damaged" Williams's entrapment defense. We disagree. First of all, a review of the record indicates that the questions at issue were argumentative, i.e., "interpos[ing] a viewpoint under the guise of asking a question." Black's Law Dictionary 114 (8th ed. 2004).[1] Several of our sister circuits have found no abuse of discretion where a court limited cross-examination in similar situations. *See United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993) (no confrontation violation where limitations on cross-examination "were made after the questioning became redundant and argumentative and most times only peripherally relevant"); *United States v. Carter*, 973 F.2d 1509, 1516-17 (10th Cir. 1992) (no abuse of discretion where cross-examination question "bordered upon being both argumentative and a comment on the evidence"); *United States v. Osorio*, 929 F.2d 753, 760 (1st Cir. 1991) (no confrontation violation where the "questions put by defense counsel as to which objections were

---

[1] For example, Williams's counsel asked the government's lead investigator, Tonja Bryant-Smith, for the number of times that the Florida Department of Law Enforcement ("FDLE") drug-tested the CI during its investigation of Williams. Bryant-Smith responded: "We don't drug-test any of our informants. It's just not something we do. I've been there three years, and we've never drug-tested any informants." Williams's counsel replied: "You don't want to test them?" At this point the government objected to counsel's question as argumentative, and the district court sustained the objection.

4

sustained were largely argumentative, and essentially called upon [the witness] to give his own opinion concerning the truthfulness of another witness's testimony"); *cf. United States v. Rubin*, 733 F.2d 837, 841 (11th Cir. 1984) ("The district court also acted correctly in sustaining defense counsel's argumentative, redundant and sometimes speculative questions."). Second, the district court's actions in sustaining five objections did not deprive Williams of a full and fair opportunity, through cross-examination, "to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Van Arsdall*, 475 U.S. at 680, 106 S. Ct. at 1436. The record shows that Williams's counsel had the opportunity–and was in fact able–to elicit plenty of factual testimony from which the jury could draw inferences (and counsel could argue) against the CI's credibility and the propriety of the government's investigation.[2] Accordingly, we find no abuse of discretion.[3]

## II.

Williams also asserts that he was a victim of "sentencing entrapment,"

---

[2] In closing arguments, for example, Williams's counsel suggested that FDLE's decision not to test the CI for drug use was a "don't ask, don't tell" approach intended to avoid eliciting any information that might tend to undermine the CI's credibility at trial. Counsel also pointed to the CI's status as a paid informant to suggest a financial motive on the CI's part for participating in entrapment.

[3] We likewise reject Williams's assertion, based on the same arguments, that the district's court's decision to sustain the government's five objections essentially deprived Williams of effective assistance of counsel.

5

because the government could have arrested him after the second drug transaction underlying his convictions, but instead continued to conduct several additional controlled buys, thereby increasing the Guidelines range applicable to Williams.

In the wake of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), we review sentences for reasonableness, with the Guidelines considered to be advisory. *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005) (per curiam). *Booker* did not, however, alter our review as to the application of the Guidelines. *See id.* at 786 (explaining that district court must still calculate the Guidelines range correctly and consider the factors set forth in 18 U.S.C. § 3553(a)). Thus, we review a district court's application of the Guidelines de novo and its findings of fact for clear error. *United States v. Baker*, 432 F.3d 1189, 1253 (11th Cir. 2005), *cert. denied*, 74 U.S.L.W. 3586 (U.S. Apr. 17, 2006) (No. 05-9687).

Although Williams claims the government engaged in "sentencing entrapment," that term denotes "[a] claim that a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998) (internal quotes omitted). Given that Williams's argument focuses not on his predisposition, but rather on the government's conduct in

6

continuing to pursue controlled buys, Williams's claim is better described as one of "sentencing factor manipulation" (or "sentencing manipulation"). *See id.* ("While sentencing entrapment focuses on the defendant's predisposition, sentencing factor manipulation focuses on the government's conduct."). A claim of sentencing manipulation "requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, . . . or due process claim, . . . must sometimes be filtered out of the sentencing calculus." *Id.* (internal quotes omitted). Even before *Booker*, however, we had not decided whether sentencing manipulation was a valid defense or basis for downward departure. *See id.*; *United States v. Govan*, 293 F.3d 1248, 1251 (11th Cir. 2002) (per curiam).

Assuming that Williams can invoke a sentencing manipulation defense, he has nevertheless failed to show that it is applicable here. Williams argues that, because the government vouched for the credibility of the CI, the only reason additional controlled buys were conducted was to enhance Williams's liability under the Guidelines. At sentencing, however, the district court noted that multiple controlled buys strengthened the prosecution's case, and stated:

> The reason that there were several transactions here is not that the government was trying to increase the sentence. The reason there were several transactions here is that Mr. Williams was willing to engage in those transactions. The amount of drugs he's held

7

accountable for in this presentence report doesn't overstate the seriousness of the offense. If anything, it's the other way around. This is only a portion of the drugs that Mr. Williams was engaged in dealing on an ongoing basis.

Furthermore, we rejected a similar claim of sentencing manipulation in *Govan*. *See* 293 F.3d at 1251 ("Making four purchases instead of just one in this case is no more manipulative than the government in *Sanchez* setting in motion a fictitious sting operation involving a large quantity of drugs instead of a small one."). As we stated in *Govan*, "there is nothing wrong with the government attempting to strengthen its case for conviction." *Id.*

## III.

Upon our review of the parties' briefs and the record, we find that the district court did not abuse its discretion in sustaining objections to certain cross-examination questions posed by Williams's counsel, and that the district court did not err in rejecting Williams's claim of sentencing manipulation. Accordingly, we affirm Williams's convictions and sentences.

**AFFIRMED.**