RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0156p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

<table>
<tr><td>

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEFFERY HAVIS,

*Defendant-Appellant*.

</td><td>

No. 17-5772

</td></tr>
</table>

FILED

Jul 12, 2019

DEBORAH S. HUNT, Clerk

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:16-cr-00121-1—Travis R. McDonough, District Judge.

Decided and Filed: June 6, 2019

BEFORE: COLE, Chief Judge; DAUGHTREY, MOORE, CLAY, GIBBONS, SUTTON,
GRIFFIN, KETHLEDGE, WHITE, STRANCH, DONALD, THAPAR, BUSH, LARSEN,
NALBANDIAN, READLER and MURPHY, Circuit Judges.

———————————

**COUNSEL**

**ON MOTION FOR EN BANC RECONSIDERATION AND REPLY:** Debra A. Breneman,
UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.
**ON RESPONSE IN OPPOSITION:** Jennifer Niles Coffin, FEDERAL DEFENDER
SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.

The en banc court issued an order. SUTTON, J. (pp. 3–7), delivered a separate
concurring opinion.

_____

**ORDER**

_____

UPON CONSIDERATION of the government's motion for reconsideration of the en banc court's opinion of June 6, 2019,

AND FURTHER CONSIDERING the Defendant's response in opposition and the government's reply,

IT IS ORDERED that the motion be, and it hereby is, DENIED.

———————————

## CONCURRENCE

———————————

SUTTON, Circuit Judge, concurring in the denial of en banc reconsideration. The government raises an argument for the first time in its motion for en banc reconsideration that warrants a few words in response and that may imply a separate problem the parties did not address.

Jeffery Havis pleaded guilty to being a felon in possession of a firearm. Based on his prior Tennessee conviction for selling or delivering drugs, *see* Tenn. Code Ann. § 39-17-417(a)(2), (3), the district court found that Havis had a prior conviction for a controlled substance offense. The court accordingly adjusted his base offense level under the guidelines and sentenced him to 46 months in prison.

Havis argued on appeal that his Tennessee conviction did not qualify as a controlled substance offense because "delivery" under Tennessee law covers more conduct than the sentencing guidelines. He noted, more to the point, that Tennessee defines delivery to include "attempted transfer" of drugs. Tenn. Code Ann. § 39-17-402(6). The guidelines meanwhile define a controlled substance offense as one "that prohibits the manufacture, import, export, distribution, or dispensing" of drugs (or possessing drugs with intent to do the same). U.S.S.G. § 4B1.2(b); *see id.* § 2K2.1 cmt. n.1. Only in the commentary do the guidelines say that *attempting* to commit a controlled substance offense also qualifies. *Id.* § 4B1.2 cmt. n.1. As Havis sees it, the guidelines' commentary doesn't count, making Tennessee delivery overbroad under the categorical approach.

The panel majority agreed with Havis but held that a prior decision of this court required it to affirm the longer sentence anyway. *United States v. Havis*, 907 F.3d 439, 442–44 (6th Cir. 2018). The dissent would have granted Havis relief because our earlier decision did not address this issue. *Id.* at 452–53 (Daughtrey, J., dissenting).

We granted en banc review and reversed, holding that the sentencing commission could not expand the guidelines' definition of a controlled substance offense to include attempt

offenses through commentary, as it did in this instance. *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (en banc) (per curiam). In doing so, we followed the lead of the D.C. Circuit, *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018), and of the Seventh Circuit on the broader point that the commentary to the guidelines binds courts only to the extent it interprets a guidelines provision, not to the extent it adds to the text, *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (en banc). And in doing so, we were unanimous.

Not so fast, the government responds. In its motion for en banc reconsideration, it argues (for the first time in this case) that attempt crimes *do* fall within the guidelines' definition of a controlled substance offense because "distribution"—a word in the text of the guidelines—covers attempts.

I disagree, with one caveat.

Resolution of the point turns on statutory definitions and a technical, but important, difference between completed offenses and attempted offenses. Start with the Controlled Substances Act, from which the guidelines borrow terms to define a controlled substance offense. The Controlled Substances Act makes it unlawful to "manufacture, distribute, or dispense" certain drugs. 21 U.S.C. § 841(a)(1). The Act defines "distribute" as "to deliver," *id.* § 802(11), and defines "deliver" as "the actual, constructive, or *attempted* transfer" of drugs, *id.* § 802(8) (emphasis added). Someone thus may commit the offense of distributing drugs by attempting to transfer drugs. But that does not make the crime of conviction under § 841 an *attempted* distribution. Instead, a different provision criminalizes attempted drug offenses, such as attempted distribution. *Id.* § 846. The two constitute distinct offenses, one greater and one lesser, one complete and one attempted. *Costo v. United States*, 904 F.2d 344, 348 (6th Cir. 1990).

In § 846, Congress codified the well-established legal definition of attempt liability from the Model Penal Code, which requires an intent to commit a crime and a substantial step toward that commission. *United States v. Daniels*, 915 F.3d 148, 161 (3d Cir. 2019); *see United States v. Williams*, 704 F.2d 315, 321 (6th Cir. 1983). But, in defining distribution, it appears that Congress used the ordinary meaning of "attempted transfer," not its legal term-of-art meaning.

*Cf. United States v. Cortes-Caban*, 691 F.3d 1, 17–18 (1st Cir. 2012) (giving "transfer" its ordinary meaning in construing the phrase). That explains why the government prosecutes someone under § 841 when he distributes drugs, but under § 841 *and* § 846 when he attempts to distribute drugs. *See, e.g.*, *Costo*, 904 F.3d at 345. When someone attempts to transfer drugs in the ordinary sense, he has distributed drugs and violated § 841; but when someone attempts to distribute drugs in the legal sense, he has attempted only to distribute (or attempted to attempt to transfer) drugs and violated § 846. A conviction for distributing drugs is not, then, a conviction for attempting a drug crime.

Now to the guidelines. Though they do not define distribution, I see no reason to give the word (in the definition of "controlled substance offense" no less) a different meaning from the one in the Controlled Substances Act. *Cf.* 28 U.S.C. § 994(h). But, just as the federal code separately proscribes attempted drug offenses, so must the guidelines. When a person commits (and is convicted of) a completed crime under state or federal law that fits within the guidelines' definition of a controlled substance offense, he faces a higher base offense level. U.S.S.G. § 2K2.1(a). That may be true even if the prior crime is federal distribution and may involve only ordinary "attempted transfer." 21 U.S.C. § 802(8), (11); *see United States v. Walton*, 56 F.3d 551, 555 (4th Cir. 1995) (holding that distributing drugs, in violation of § 841(a)(1), counts as a controlled substance offense); *United States v. Govan*, 293 F.3d 1248, 1250 (11th Cir. 2002) (per curiam) (same). But when a person *attempts* to commit a drug crime and is convicted of attempting that drug crime, he does not fall within the guidelines' definition. All in all, the commission tried to add attempts (in the same legal sense as used in § 846) in the commentary rather than in the text. That it may not do. *See Winstead*, 890 F.3d at 1092; *see also Rollins*, 836 F.3d at 742. We rightly said so in *Havis*. 927 F.3d at 386–87.

(By the way, the government's argument that the commission actually did present to Congress the commentary adding attempted drug offenses doesn't change matters. Congress is on notice that it must review proposed textual amendments to the guidelines within a certain time period, so we can assume Congress approves them unless it says otherwise. 28 U.S.C. § 994(p); *see Mistretta v. United States*, 488 U.S. 361, 393–94 (1989). No such statutory provision

requires the commission to submit proposed commentary to Congress. So nothing alerts Congress that it must (or even should) review proposed changes to the guidelines' commentary.)

The government's fears about this conclusion do not bear out. Under its view, *Havis* will require us to say that a conviction under § 841(a)(1) does not qualify as a controlled substance offense. I agree that it would be bizarre if violating the primary provision of the Controlled Substances Act turned out not to be a controlled substance offense. But that won't be the case, as just shown. Only attempted drug crimes, under § 846 or state analogues, face that possibility.

That leaves a different problem, one the parties did not flesh out. Namely, Tennessee law parallels federal law on this issue. Tennessee law defines the *completed* offense of delivery as "the actual, constructive, or attempted transfer . . . of a controlled substance." Tenn. Code Ann. § 39-17-402(6). In all relevant respects, that's identical to the federal definition of distribution. 21 U.S.C. § 802(8), (11). And, just like federal law, Tennessee law separately criminalizes attempting to violate the drug laws. Tenn. Code Ann. § 39-12-101(a). Someone who attempts to *transfer* drugs in Tennessee has committed the completed offense of delivery under § 39-17-417(a)(2), and someone who attempts to *deliver* drugs thus has committed the lesser-included, but distinct, offense of attempted delivery under § 39-12-101(a). *See State v. Pinegar*, No. M2015-02403-CCA-R3-CD, 2016 WL 6312036, at \*15–16 (Tenn. Crim. App. Oct. 28, 2016).

That means a person who commits a completed delivery offense under Tennessee law may merit a guidelines bump because Tennessee's definition of delivery seems to match the term distribution (delivery) in the guidelines' definition of a controlled substance offense. *See United States v. Goldston*, 906 F.3d 390, 396 (6th Cir. 2018) (holding that Tennessee delivery qualifies as a serious drug offense under ACCA because Tennessee delivery matches federal distribution). But a person who attempts to deliver drugs under Tennessee law has not committed a controlled substance offense because the guidelines' commentary cannot add attempted offenses to the definition.

Havis pleaded guilty to the completed offense of selling or delivering under Tennessee law. So Havis's prior conviction may qualify as a controlled substance offense and thus may

warrant the higher base offense level. But the government, even in its motion for reconsideration, did not make this argument. It is too late to make it now. As for future cases, the parties may wish to consider the point.

For these reasons, I concur in the denial of reconsideration.

ENTERED BY ORDER OF THE COURT

_____
Deborah S. Hunt, Clerk